IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN McKINNEY,              )
           Plaintiff,      )
              )
vs.                  )    Case No. 12-cv-0885-MJR-SCW
              )
AMERICAN RIVER TRANSP. CO.,    )
              )
         Defendant.    )

<u>MEMORANDUM AND ORDER</u>

REAGAN, District Judge:

### A.   INTRODUCTION AND PROCEDURAL HISTORY

In August 2012, John McKinney filed suit in this Court, presenting claims for negligence under the Jones Act, 46 U.S.C. 30101, et seq., and for unseaworthiness, maintenance, cure, and wages under general maritime law.  Named as Defendant was McKinney's former employer, American River Transportation Company (ARTCO).  McKinney alleged that he was injured on February 16, 2011, while serving as a crew member above an ARTCO vessel and that ARTCO's "tortious acts" caused or contributed to McKinney's damages, including medical expenses, loss of earnings and earning capacity, pain and suffering, humiliation and mental anguish, and aggravation of prior condition "if any there be" (Complaint, Doc. 2, p. 2).  The complaint sought to recover damages plus interest, costs, attorney's fees and expenses (*id.*).

The original complaint alleged only that McKinney  was injured on February 16, 2011 while trying to straighten a bowed tow in the course of his employment.  A first amended complaint (Doc. 18) added three other claims from different dates:

Page 1

(1) **August 16, 2010** -- ARTCO refused to provide **maintenance and cure** when Plaintiff suffered "serious headaches after ejaculation;"[1]

(2) **September 21, 2011 –** Plaintiff was injured when his "fellow employee failed to exercise reasonable care and fell on Plaintiff," due to the **unseaworthy condition** of the ARTCO vessel;[2] and

(3) **December 6, 2011 to January 13 (or 31), 2012** -- ARTCO did not pay Plaintiff the **maintenance** to which he was entitled to after his employment ended and before he reached MMI.[3]

The amended complaint does not contain separate counts for separate claims. Plaintiff invokes subject matter jurisdiction under the Jones Act "for negligence" and under general maritime law "for unseaworthiness, maintenance, cure and wages" (Doc. 18, p. 1).

The case is set for November 15, 2013 final pretrial conference and December 2, 2013 jury trial before the undersigned District Judge. A settlement conference was set for March 28, 2013, canceled when the parties advised the Court that a settlement conference would be futile at that time, and rescheduled as a June 28, 2013 status conference before the Honorable Stephen C. Williams, United States Magistrate Judge.

---

[1]     The amended complaint contains a typographical error, listing the date on this claim as August 16, <u>2012</u>. Subsequent filings explained that this was meant to be August 16, <u>2010.</u>

[2]     It is unclear from the wording of this sentence in the complaint whether the fellow employee fell on Plaintiff or whether a double eye wire fell on Plaintiff.

[3]     MMI is an acronym for maximum medical improvement. As a general rule, once MMI is reached, the shipowner's obligation to pay maintenance and cure ceases. *See, e.g., Vaughan v. Atkinson,* **369 U.S. 527 531 (1962); Skowronek v. American Steamship Co.,** **505 F.3d 482, 485 (6th Cir. 2007),** *cert. dismissed,* **129 S. Ct. 7 (2008).**

Page 2

Now pending before the Court is Plaintiff's April 10, 2103 motion to compel payment of maintenance and cure and motion for summary judgment, with supporting memorandum and exhibits (Docs. 23, 24).   The motion ripened after the filing of supplemental briefs on June 24, 2013.   For the reasons delineated below, the Court denies Plaintiff's motion.

**B.**     **S**TANDARD **G**OVERNING **S**UMMARY **J**UDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012)**, *citing* F**ED**. R. C**IV**. P. **56(a).** A "genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC*, **656 F.3d 540, 547 (7th Cir. 2011)**, *citing Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).**

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case," evidence on which a reasonable jury could rely.  *Porter v. City of Chicago*,  **700 F.3d 944, 956 (7th Cir. 2012)**, *citing Goodman v. Nat'l Sec. Agency, Inc.*, **621 F.3d 651, 654 (7th Cir. 2010).**

In assessing a summary judgment motion, the district court views all facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party.  *Anderson v. Donahoe*, **699 F.3d at 994**, *citing Ault v. Speicher*, **634 F.3d 942, 945**

(7th Cir. 2011).  *Accord Righi v. SMC Corp.*, **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).**   Before the nonmovant can benefit from this favorable view of the evidence, however, he must first actually place some evidence before the court.  *Montgomery v. American Airlines, Inc.,* **626 F.3d 382, 389 (7th Cir. 2010).**

An additional word regarding the burden of proof is warranted here.   The Supreme Court has reminded district courts that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Liberty Lobby,* **477 U.S. at 254.**   Rule 56 imposes an initial burden of production on the movant for summary judgment – he must demonstrate that a trial is not needed.  *Celotex Corp. v. Catrett,* **477 U.S. 317, 323 (1986).**  A few months ago, the Court of Appeals for the Seventh Circuit reiterated how this burden works in the typical case – i.e., when the summary judgment motion is filed by the party that does *not* bear the ultimate burden of persuasion at trial:

> Where the nonmovant bears the ultimate burden of persuasion on a particular issue, … the requirements that Rule 56 imposes on the moving party are not onerous.  It does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id. (emphasis in original).*  Rather, the movant's initial burden "may be discharged by 'showing' – that is point[ing] out to the district court – that there is an absence of evidence to support the nonmoving party's case."
>
> Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.   The nonmovant need not depose her own witnesses or produce evidence in a form that would be admissible at trial, but she must "go beyond the pleadings" … to demonstrate that there is evidence "upon

which a reasonable jury could properly proceed to find a verdict" in her favor."

*Modrowski v. Pigatto,* **712 F.3d 1166, 2013 WL 1395696, \*2 (7th Cir. April 8, 2013).** *See also* **Marcatante v. City of Chicago, 657 F.3d 433, 439 (7th Cir. 2011); *Crawford v. Countrywide Home Loans, Inc.,* 647 F.3d 642, 648–49 (7th Cir. 2011), *citing Celotex,* 477 U.S. at 323.**

In the case at bar, though, *Plaintiff* seeks summary judgment. When the party moving for summary judgment also bears the burden of persuasion at trial, that party's initial summary judgment burden is higher. When a summary judgment movant bears the burden of persuasion at trial (e.g., the movant is the plaintiff, or the movant is a defendant asserting an affirmative defense), he must establish all the essential elements of her claim (or defense). *See Celotex,* **477 U.S. at 322.** *See also Surles v. Andison,* **678 F.3d 452, 455-56 (6th Cir. 2012) (if summary judgment movant is plaintiff, she must show that the record contains evidence satisfying her burden of persuasion);** *Adler v. Wal-Mart Stores, Inc.,* **144 F.3d 664, 670 (10th Cir. 1998)(at summary judgment stage, party that bears burden of persuasion at trial must come forward with sufficient evidence of each essential element of its prima facie case);** MOORE'S FEDERAL PRACTICE **§ 56.13(1) (3d ed. 2000).**

To summarize, if the summary judgment movant does *not* bear the burden of proof at trial, he can prevail just by showing an absence of evidence to support <u>any</u> essential element of the nonmovant's case. But if the summary judgment movant *does* bear the burden of proof at trial, he can prevail only by proving <u>each</u> element of his case

with evidence sufficiently compelling that no reasonable jury could return a verdict for the nonmovant. ***Celotex,*** **477 U.S. at 331 ("If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial").** ***See also Anderson,*** **477 U.S. 248;** *Lewis v. Kordus,* **2010 WL 3700020 (E.D. Wisc. 2010) (unreported).** The case at bar fits in the latter category.

    C.    <u>ANALYSIS OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<sup>4</sup></u>

Plaintiff moved for summary judgment only on his Jones Act negligence claim. He also seeks to obtain a judgment in his favor (compelling ARTCO to pay an award of maintenance and cure) on two other claims in the amended complaint (the maintenance and cure claims). However, he identified no procedural mechanism that allows him to avoid a trial and prevail *pretrial* on his claims of maintenance and cure via generic motion or "motion to compel." The Court solicited the parties' input on the question of whether Plaintiff sought judgment on his maintenance and cure claims by way of

---

        <sup>4</sup>    As mentioned above, the amended complaint presents four claims – (1) **maintenance and cure** (8/16/10), (2) **negligence** under the Jones Act (2/16/11), (3) **unseaworthiness** under general maritime law (9/21/11), and (4) **maintenance** between the date his employment ended and when he claims to have reached MMI (12/6/11 – 1/31/12). Plaintiff moved for summary judgment on the Jones Act claim and moved "to compel" on the maintenance and cure claims. He later explained that the summary judgment standard applies to the 8/16/10 maintenance and cure claim, but a "lesser standard" set forth in several lower court decisions applies to "the reinstatement claim" (*see* Doc. 30). Plaintiff's reply brief (Doc. 27, pp. 3-4) indicates that the "reinstatement claim" refers to the 12/6/11 – 1/31/12 maintenance claim (i.e., maintenance after Plaintiff's termination).

summary judgment motion under Rule 56, motion for judgment on the pleadings under Rule 12(c)[5], or some other rule or mechanism.

Having reviewed the briefs, the undersigned Judge concludes that whatever label Plaintiff used on his pretrial motion, it is best construed as a motion for summary judgment on three of four claims contained in the amended complaint:  (1) the Jones Act **negligence** claim; (2) the August 2010 claim for **maintenance and cure**; and (3) the **maintenance** claim for December 6, 2011 to January 31, 2012.

■    <u>Jones Act Negligence Claim for February 16, 2011 Injury</u>

The undisputed facts relevant to this claim (gleaned from deposition testimony, exhibits, affidavits and other materials submitted with the parties' summary judgment briefs), may be summarized as follows.  On February 16, 2011, Plaintiff was working on the M/V American Pillar.  Plaintiff was the watchman, responsible for supervising a deckhand with whom he was working (Marty Motes).  Plaintiff and Motes, together with crewmembers from another ARTCO vessel (the M/V Harvest Bounty) were engaged in the process of building the American Pillar's northbound tow.  Plaintiff testified in his deposition that from the time he came on watch at 6:00 a.m. up until the time of the accident that day (February 16, 2011), he was "building tow" (Plaintiff's Depo. at p. 129, Exhibit 7 to Plaintiff's Supporting Memo at Doc. 24).  This testimony syncs with that of the Captain of the American Pillar, Terrell Griffis (Exh. 23 to Doc. 24).

---

[5]    Motions for judgment on the pleadings are typically used to dismiss complaints on the basis of affirmative defenses like the statute of limitations (often pre-discovery).  ***See, e.g., Brownmark Films, LLC. v. Comedy Partners,*** **682 F.3d 687, 689 (7th Cir. 2012).**

The tow (which was moored to the shore) had a bow in the port side.  The crew members had to remove this bow in the tow, before the American Pillar could get underway.  As exhibits submitted with the parties' summary judgment briefs explain, a straight tow moves more efficiently through the water.  Plaintiff testified that he was working on straightening the barges by loosening and tightening cables with a winch, while the American Pillar and other boats pushed on the barges in the tow to straighten them.  During this process, while cranking on a wheel winch, Plaintiff felt pain in his wrist.  The incident report reflects that Plaintiff was coupling from the boat's starboard side, rapidly wheeling slack with a Patterson winch and suddenly felt something in his wrist pop (Exhibit 9 to Plaintiff's Depo.).

Plaintiff criticized this method of straightening the tow; he testified in his deposition that it would have been better to start from scratch building the tow. Moving for summary judgment on this claim, Plaintiff asserts that (a) ARTCO's employees violated an internal mandatory rule when they initially built the tow, thus the tow was built "negligently as a matter of law," (b) Plaintiff was injured while trying to remove the bow from the tow; and (c) ARTCO should be held vicariously liable for its employees' negligence (Doc. 24, pp. 5-6).

Enacted in 1920, the Jones Act provides that "a seaman injured in the course of employment … may elect to bring a civil action at law, with the right of trial by jury, against the employer." **46 U.S.C. 30104 (formerly codified at 46 U.S.C. app 688(a)).** "Congress enacted the Jones Act to create a federal negligence claim for seamen injured in the course of employment." ***Sobieski v. Ispat Island, Inc.,*** **413 F.3d 628, 631 (7th Cir.**

2005).  The Jones Act extends the protections of the Federal Employer's Liability Act (FELA), **45 U.S.C. 51**, to seamen.  The Jones Act provides this "heightened legal protection to eligible seamen because of their exposure to 'the perils of the sea' in the course of their duties."  *Id.  See also Howard v. Southern Illinois Riverboat Casino Cruises, Inc.,* **364 F.3d 854, 856 (7ᵗʰ Cir. 2004)**, *cert. denied,* **543 U.S. 942 (2004),** *citing Chandris, Inc. v. Latsis,* **515 U.S. 347, 368 (1995).**

"The Jones Act provides a generous tort remedy for injuries to seamen, in recognition … of the hazards of sea duty."  *Tate v. Showboat Marina Casino Partnership,* **431 F.3d 580, 584 (7ᵗʰ Cir. 2005).**  Under the Jones Act, a seaman can file suit in federal court against his employer for injuries suffered due to the employer's negligence.   And under the doctrine of respondeat superior, "a Jones Act employer may be liable for the negligence or intentional torts of its employees."  *Sobieski,* **413 F.3d at 631.**

Negligence claims brought under the Jones Act and unseaworthiness claims brought under general maritime law "are distinct causes of action, the elements of which differ somewhat."  *Wingerter v. Chester Quarry Co.,* **185 F.3d 657, 666 (7ᵗʰ Cir. 1998).**  A Jones Act claim has four elements:  (1) that the plaintiff is a seaman under the Act, (2) that the plaintiff suffered the injury in the course of his employment, (3) that the plaintiff's employer was negligent, and (4) that the employer's negligence caused plaintiff's injury, at least in part.  *See, e.g., Holloway v. Pagan River Dockside Seafood, Inc.,* **669 F.3d 448, 451 (4ᵗʰ Cir. 2012);** *Martin v. Harris,* **560 F.3d 210, 216 (4ᵗʰ Cir. 2009).**

The first three elements (duty, breach, and injury) "draw on common-law principles," but the fourth element (causation) is governed by a relaxed standard. *Martin*, **560 F.3d at 216.**   The seaman's burden to prove causation is quite light and has been described as "featherweight." *Cella v. U.S.*, **998 F.2d 418, 427 (7th Cir. 1993).**   A Jones Act seaman must establish that the acts or omissions of his employer played a part, no matter how small, in producing his injury. *Cella*, **998 F.2d at 428.**

In the case at bar, Plaintiff claims that he is entitled to summary judgment on his Jones Act negligence claim under a theory that ARTCO was negligent as a matter of law (i.e., *negligent per se*) for Plaintiff's February 16, 2011 injury, sustained during the process of attempting to straighten a bowed tow.   "Under the doctrine of negligence per se, a Jones Act employer may be liable if its violation of a statutory duty causes injury to its seaman-employee." *Manderson v. Chet Morrison Contractors, Inc.*, **666 F.3d 373, 377 (5th Cir. 2012),** *quoting Park v. Stockstill Boat Rentals, Inc.*, **492 F.3d 600, 603 (5th Cir. 2007).[6]** *See also Kernan v. American Dredging Co.*, **355 U.S. 426 (1958).**

The elements of a Jones Act negligence per se claim have been summarized as:

(1) a violation of Coast Guard regulations, (2) the plaintiff's membership in the class of intended beneficiaries of the regulations, (3) an injury of a type against which the regulations are designed to protect, (4) the unexcused nature of the regulatory violation, and (5) causation.

---

[6]      Some Circuit Courts have noted that it does not matter whether negligence per se is treated as a distinct cause of action or treated as a way to establish one of the elements of the traditional Jones Act cause of action. *See, e.g., Davis v. Odeco, Inc.*, **18 F.3d 1237, 1241 n.6 (5th Cir.) ("rarely does anything turn on this distinction because, however the theory is characterized, a plaintiff must nonetheless prove causality and damages"),** *cert. denied,* **513 U.S. 819 (1994).**

*Fuszek v. Royal King Fisheries, Inc.,* **98 F.3d 514, 517 (9ᵗʰ Cir. 1996),** *citing Smith v. Trans-World Drilling Co.,* **772 F.2d 157, 160 (5ᵗʰ Cir. 1985),** *and* **1 T. Sᴄʜᴏᴇɴʙᴀᴜᴍ,** *Admiralty and Maritime Law,* **§ 6-22 at 322 & nn.31, 32 (2ⁿᵈ ed. 1994).**

In *Kernan***, 355 U.S. at 431,** the Supreme Court held that a violation of a statute or Coast Guard regulation that causes the injury or death of an employee creates liability "in the absence of any showing of negligence." The Court in *Kernan* also indicated that a Jones Act plaintiff need not show that the injury was one which the statute/regulation was designed to prevent. *Kernan***, 355 U.S. at 432.** *See also MacDonald v. Kahikolu, Ltd.,* **442 F.3d 1199, 1203 (9ᵗʰ Cir. 2006)("Thus, under the Jones Act, the common-law concepts of foreseeability and risk of harm are not applicable where the employer violates a federal statute or a Coast Guard regulation, if such conduct in whole or in part caused injury.").** Without question, though, the Jones Act seaman proceeding as Plaintiff does here must show a breach of a statutory duty or violation of a marine regulation. That is where Plaintiff comes up short.

Plaintiff reasons that ARTCO's employees violated a company rule in building a tow that was not straight, that this violation constitutes negligence as a matter of law, and that his injury "was sustained with the risk created by Defendant's negligent building of a bowed tow" (Doc. 24, p. 6). This argument fails on several grounds.

First, Plaintiff – who, as movant for summary judgment, bears the burden of establishing each element of his Jones Act claim – has not demonstrated the violation of any regulation or statute. Cases have stressed that to establish negligence per se, the plaintiff "must show as a threshold matter, that his employer violated a statute or Coast

Guard regulation." *Park,* **492 F.3d at 603. *See also Manderson,* 666 F.3d at 379 (seaman did not establish a violation of any statute or Coast Guard regulation, so district court did not need to address negligence per se liability any further).** So, for instance, in *Jacobo v. U.S.,* **853 F.2d 640, 641-42 (9th Cir. 1988)**, the Court of Appeals founds that a naval ship's technical manual was not a "regulation" and did not have the force of law to support a negligence per se claim.

Here, Plaintiff has failed to point to a statute, Coast Guard regulation, or other marine safety regulation with the force of law. At the time of Plaintiff's accident, ARTCO had an unwritten internal procedure for building tow which instructed that when building tow, tows must be straight without notches or bows. But that procedure was not even reduced to a written policy until *after* Plaintiff's February 2011 accident. *See* Doc. 26, n. 3, and Declaration of Dan Saunders, Manager of ARTCO's New Orleans Fleet, Doc. 26-6, p. 2. And a company's internal procedure or policy about building an efficiently-moving tow is *not* a statute or regulation designed for crew safety.

Plaintiff has not pointed to the existence of a statute, Coast Guard regulation, or other marine safety regulation. Assuming that Plaintiff had made that showing, he has not established that ARTCO *violated* the statute/regulation. The record before the Court plainly reveals that, at the time of Plaintiff's February 2011 wrist injury, he and the ARTCO crew were endeavoring to remove a bow in the tow, while the tow was still moored to the bank, and before the American Pillar had gotten underway pushing the tow upstream. Straightening the tow would be an act in compliance with the policy as opposed to a violation of the policy.

Analysis of this point need go no further.    Plaintiff has not established that his employer violated a statute or Coast Guard regulation, to even trigger application of the doctrine of negligence as a matter of law.  Plaintiff has not met his burden to obtain summary judgment on the Jones Act negligence claim.

■ **<u>The August 2010 Claim for Maintenance and Cure</u>**

Whereas the Jones Act extends the uniquely liberal employer-liability standard of the Federal Employers Liability Act to seamen, the "doctrine of maintenance and cure obligates employers to provide room, board, and medical care to seaman injured on the job, even if through no fault of the employer." ***Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1103 (7th Cir. 2004), *citing Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 440-41 (2001), *Miles v. Apex Marine Corp.*, 498 U.S. 19, 23-24 (1990), and *Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2nd Cir. 2004).**

Stated another way: "General admiralty law entitles an injured seaman to maintenance (shelter until he recovers) and cure (treatment), plus lost wages – all irrespective of any negligence on his part – and, if his injury was caused by the unseaworthiness of the ship on which he was injured, to damages comparable to those available in a nonmaritime personal injury suit," subject to the partial defense of comparative negligence. ***Deering v. National Maintenance & Repair, Inc.*, 627 F.3d 1039, 1041 (7th Cir. 2010).**

The Court of Appeals for the Fifth Circuit has explained:

Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel.

The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment.  A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed.

*Jauch v. Nautical Services, Inc.*, **470 F.3d 207, 212 (5th Cir. 2006).**

In this case, Plaintiff seeks summary judgment on a maintenance and cure claim stemming from an incident prior to his February 2011 reported wrist injury.  The briefs refer to this as the "Ricky Boxing" claim – apparently a slang term for masturbation which originated in the United States Navy (*see* Doc. 24, p. 9, n.3). While in his quarters on the M/V American Beauty on August 16, 2010, Plaintiff masturbated and ejaculated, after which he developed a serious headache.  According to Plaintiff's deposition, he had experienced similar headaches previously, and they progressed from "regular headaches" to headaches in which he was immobilized.   Plaintiff testified that the headaches had got so bad that he  "quit, of course.  You know, I stopped.  I mean, I kept giving myself a migraine – horrible migraine headache" (Plaintiff's Depo., p. 102).

Worried the severe headache on August 16, 2010 might be a brain aneurysm, Plaintiff sought medical attention.  Plaintiff got off the boat for treatment, saw Dr. Pennington twice (August 26, 2010 and September 1, 2010), had an MRI of his brain, was prescribed medication, was released to work after the September 1st appointment, and was able to catch the boat on his next scheduled trip.  Plaintiff had no further problems with headaches after treating with Dr. Pennington.  *See* Plaintiff's Depo. at pp. 94-107; Exh. 7 to Doc. 24.

Plaintiff returned to work on September 10, 2010, but ARTCO denied his request for payment of maintenance and cure for the August 16 to September 10, 2010 period. The August 19, 2010 letter (from a claims adjustor at ADM Insurance and Risk Management) informing Plaintiff of this denial states: "It is our position that your claim for 8/16/10 is not work-related.  Therefore, ADM will make no voluntary payments for medical benefits under ARTCO Jones Act Workers' Compensation" (Exhibit 5 to Doc. 24).

Plaintiff now seeks to recover $402.68 in cure (which he describes as the total of his unpaid clinic bills for August and September 2010)[7] and $625 in maintenance ($25 per day for 25 days). In moving for summary judgment, Plaintiff argues that maintenance and cure is payable whether or not an injury is work-related, and that injuries sustained under exclusively personal circumstances – even during recreational activities – often are covered by maintenance and cure (Doc. 24, pp.9-10).   These statements are true as general propositions, but Plaintiff has not established his right to prevail pretrial on this claim.

The parties vigorously debate whether the doctrine of maintenance and cure covers an injury sustained while a seaman masturbates on ship.  Plaintiff testified that he masturbated in his bedroom and was not "walking around masturbating on tow" (Plaintiff's Depo. pp. 96, 101).    Plaintiff emphasizes the breadth of the shipowner's

---

[7]     The records suggest that ARTCO's health insurance plan – in which Plaintiff was enrolled (with ARTCO paying 85% of the insurance premium) – covered most of the charges for Plaintiff's headache treatment.  It is unclear whether Plaintiff himself paid any part of these bills.

obligation for maintenance and cure, while reminding the Court that the salacious aspects of the injury should be irrelevant.  ARTCO stresses that the obligation to pay maintenance and cure requires an injury or illness which bears some relationship to the ship's business, and Mr. McKinney's masturbation was utterly unrelated to the ship's business.

The central point for analysis is not whether an injury/illness was work-related but whether the seaman's injury/illness was incurred "in the service of the ship."  *See, e.g., Atlantic Sounding Co., Inc. v. Townsend,* **557 U.S. 404, 413 (2009)(shipowner is liable when seaman becomes falls ill or is injured in the service of the ship);** *Chandris,* **515 U.S. 354 (Under general maritime law, seamen are entitled to maintenance and cure from their employer for injuries incurred "in the service of the ship");** *Sobieski,* **413 F.3d at 630-31 (prior to the enactment of Jones Act, seamen were entitled only to maintenance and cure from their employer "for injuries incurred 'in the service of the ship.'").**

In *Vella v. Ford Motor Co.,* **421 U.S. 1, 3-4 (1975),** the Supreme Court summarized prior cases addressing the duty of maintenance and cure:

> The shipowner's ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship derives from the "unique hazards (which) attend the work of seamen," and fosters the "combined object of encouraging marine commerce and assuring the well-being of seamen." Aguilar v. Standard Oil Co., 318 U.S. 724, 727, 63 S. Ct. 930, 932, 87 L.Ed. 1107 (1943).  To further that "combined object" we have held that the duty arises irrespective of the absence of shipowner negligence and indeed irrespective of whether the illness or injury is suffered in the course of the seaman's employment.  Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527, 58 S. Ct. 651, 652, 82 L.Ed. 993 (1938).

More pertinent to the issue at hand, the Supreme Court directly addressed the rule that a seaman must be "in the service of a ship" to recover maintenance and cure in *Farrell v. United States,* **336 U.S. 511, 515-16 (1949)(emphasis added):**

> … logically and historically the duty of maintenance and cure derives from a seaman's dependence on his ship, not from his individual deserts, and arises from his disability, not from anyone's fault…. **Aside from gross misconduct or insubordination, what the seaman is doing and why [or] how he sustains injury does not affect his right to maintenance and cure, however decisive it may be as to claims for indemnity or for damages for negligence. He must, of course, at the time be "in the service of the ship," by which is meant that he must be generally answerable to its call to duty rather than actually in performance of routine tasks or specific orders.**

> … the seaman's right to maintenance and cure … is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations. The seaman could forfeit the right only by conduct, whose wrongful quality even simple men of the calling would recognize - **insubordination, disobedience to orders, and gross misconduct.**

*See also Messier v. Bouchard Transp.,* **688 F.3d 78, 82 (2nd Cir. 2012) (maintenance and cure is not restricted to cases where the seaman's employment is the cause of his injury; acts short of culpable misconduct by the seaman will not relieve the shipowner for responsibility).**

Counsel have offered examples of seaman behavior that was (and was not) found to constitute gross misconduct relieving the shipowner from his maintenance and cure obligation.  One the one hand, a seaman who broke his leg falling from a ledge while partying at a dance hall with friends while on shore leave was found to be entitled to maintenance and cure.  *Warren v. United States,* **340 U.S. 523, 528 (1951),**

*cited in Plaintiff's brief*, **Doc. 24, at p. 10.**   On the other hand, maintenance and cure has been denied when seamen contract venereal diseases or are injured as a result of intoxication.  *Aguilar v. Standard Oil Co. of New Jersey*, **318 U.S. 724, 731 (1943),** *cited with other district court cases in Defendant's brief*, **Doc. 26, pp. 8-9).**

Plaintiff invites the Court to rule, as a matter of law, that masturbation is not a "disqualifying vice" for a maintenance and cure claim.  Although masturbation plainly is a deliberate and self-induced act, it seems a stretch to characterize it as gross *misconduct* or willful *misbehavior*.  However, the undersigned Judge does not need to reach this sticky wicket.  The Court does not determine, as a matter of law, whether an injury resulting from masturbating aboard ship can fall within the broad scope of the venerable doctrine of maintenance and cure.   Plaintiff has moved for summary judgment, and he has failed to shoulder his burden on the motion.

Careful review of the record reveals that genuine issues of material fact remain which preclude the entry of summary judgment for Plaintiff.  Those issues involve the genesis and nature of the injury on which the August 2010 maintenance and cure claim rests.   Plaintiff's current position is that he sustained this injury while masturbating in his cabin on the M/V American Beauty August 16, 2010, with symptoms possibly beginning a week or two prior.  But when Plaintiff reported the injury to his physician, Plaintiff claimed that it traced back three months (to May 2010, when he was not on any boat) and occurred during sexual intercourse. Plaintiff's own deposition testimony is unclear on this important point.  He testified to the headache occurring when he was "with someone else" (i.e., "had a sexual partner," which was not on the ship) and

happening only "in part" in his bedroom on the American Beauty (Plaintiff's Deposition, pp. 94-97).

It is, of course, true that a seaman can recover maintenance and cure for a preexisting medical condition that manifests itself while the seaman is in the service of the ship. *See, e.g., Messier,* **688 F.3d at 82.** But viewing the facts and reasonable inferences in the light most favorable to the nonmovant, the Court finds that material facts remain in dispute as to whether Plaintiff had such a preexisting condition, when it first manifested itself, and when/how it recurred.

To obtain summary judgment (thereby avoiding trial) on this claim, Plaintiff must show that his injury or illness occurred, was aggravated, or manifested itself while he was in the ship's service. The record now before the Court has not done so; genuine fact issues remain as to this key point. The Court cannot simply assume that however, wherever, whenever the headaches began, Plaintiff must have been in the ship's service. Plaintiff has not shown his entitlement to summary judgment on the August 2010 maintenance and cure claim.[8]

---

[8]    Another potential obstacle to summary judgment on Plaintiff's cure claim merits note. An injured seaman may recover maintenance and cure only for those expenses "actually incurred." *Manderson,* **666 F.3d at 382;** *Davis,* **18 F.3d at 1246.** The record currently before the Court does not establish proof of the expenses Plaintiff incurred for the medical and hospital bills associated with the August 2010 incident. Plaintiff submitted records showing charges paid by his health insurance through ARTCO; his reply brief discusses certain Blue Shield payments and collections write-offs; and he advises that the parties have agreed to further brief (via sur-reply) this cure issue (Doc. 27, p. 3). The Court did not authorize any sur-replies in this case, which already has extensive briefs on the pending motion. And the existing record does not identify

■      <u>**The Maintenance Claim for December 6, 2011 - January 31, 2012**</u>

The amended complaint alleges that Plaintiff's employment ended on or about December 6, 2011, but "he was not at MMI from the aforesaid injury," and ARTCO refused or neglected to pay Plaintiff "the MMI he was entitled to until he was at MMI on January 13, 2012" (Doc. 18, p. 2). Again, Plaintiff's pleadings inject confusion as to pertinent details. It is unclear which of the three previously alleged injuries Plaintiff references as "the aforesaid injury." The Court believes Plaintiff means the wrist injury from February 16, 2011. Plaintiff also variously references the date of his termination as December 6, 2011 and December 7, 2011 (compare, e.g., Doc. 18, p. 2 and Doc. 24, p. 4). He interchanges the date he claims to have reached maximum medical improvement as January 13, 2012 and January 31, 2012 (compare, e.g., Doc. 18, p. 2, Doc. 24, p. 4, and Doc. 27, p. 4). Despite the fact the amended complaint uses the January 13, 2012 date, it appears January 31, 2012 is the correct/intended date.[9]

The gist of this claim, the best the Court can decipher, is that Plaintiff was returned to work from the February 2011 wrist injury while still symptomatic. On August 22, 2011, his treating physician (Dr. Harris) cleared Plaintiff to work without restrictions. But Plaintiff contends he had not reached MMI as of that date.

---

what expenses -- if any -- Plaintiff himself actually incurred related to this claim.

[9] The 442nd page of exhibits submitted with Plaintiff's April 10, 2013 memorandum (Exhibit 21 to O'Bryan Declaration, filed with Doc. 24) is the notes from Plaintiff's visit to Semmes Clinic, where he saw a Dr. Hugh Harris. These notes are dated January 31, 2012.

He was seen at Southwest Spine & Sports Medicine in mid-November 2011. Records submitted with the parties' briefs indicate that Plaintiff still had pain in his wrist (in the region of the ulnar thyroid) but was regaining strength, and the electro myelograms showed continued recovery.  Plaintiff says he was not found to have reached MMI until January 31, 2012.  This date comes from the Dr. Harris/Semmes Clinic records, which contain the following notes:

> The patient has returned to work on the river barge and has been able to perform his work successfully though [he] has substituted his left hand for arduous activities and does describe some aching discomfort in the right wrist.  The patient's electrodiagnostic studies have shown progressive overall improvement in the ulnar neuropathy, but the patient, however, failed to report for his last scheduled electrodiagnostic studies.

The Disposition on the Harris notes concludes:  "Patient is released from active medical care at this time….  Patient is at maximum medical improvement.  He is released for work without restriction" (Doc. 24-25; Exhibit 21 to O'Bryan Declaration).

So Plaintiff asks for maintenance from December 6 (or 7), 2011 through January 31, 2012.  The December date is when he was terminated from his job for violating the ARTCO substance abuse policy.  The Court's scrutiny of the voluminous record before it reveals that McKinney was fired December 6, 2011 (with a letter sent to him the following day) which stated:

> Dear John:
> This letter is to affirm your termination of employment effective December 6, 2011 due to violation of ARTCO's Substance Abuse policy.
> You will, of course, receive payment for any time worked still owed to you and for any vacation pay for which you are eligible….

Doc. 24-24, Exhibit 20 to O'Bryan Declaration.

Plaintiff's argument for summary judgment on this claim, contained in his opening brief (Doc. 24, pp. 11-12) consists of eight sentences reasoning as follows. There is a presumption that a seaman is entitled to maintenance; just because a seaman is discharged from his job for unrelated misconduct is not a defense to paying maintenance; the fact that Plaintiff *previously* was returned to work on August 22, 2011 "does not necessarily mean that he was at MMI" at that point; ARTCO has the burden of proving that Plaintiff had reached MMI on the August 2011 date rather than in January 2012; ARTCO hasn't proved that; thus Plaintiff is entitled to maintenance from the time he was fired until he reached MMI (55 days at $25 per day, totaling $1375). The Court is not persuaded.

The maintenance and cure obligation "is designed to provide a seaman who is injured while in the service of his ship with reimbursement for his medical and subsistence expenses until he reaches maximum medical improvement." *MNM Boats, Inc. v. Johnson,* **2001 WL 85860, *1 (5th Cir. 2001, unpublished),** *citing Vaughan,* **369 U.S. at 531.** And, as a general rule, ambiguities regarding the seaman's right to receive maintenance "are to be resolved in favor of the seaman." *Aggarao v. MOL Ship Management Co., Ltd.,* **675 F.3d 355, 378 n.23 (4th Cir. 2012),** *quoting Vaughan,* **369 U.S. at 532.**

Following his February 2011 wrist injury, Plaintiff's treating physician returned Plaintiff to work on August 22, 2011 (Doc. 26-5, Notes from Ferrell-Duncan Clinic 8/22/11 office visit with Dr. Harris. The notes from his August 22, 2011 doctor visit

(id.) plainly state, under Disposition:   "Patient is cleared for full duty without restriction.  Return in approximately three months for reevaluation…."

Between the date of the wrist injury and the August 22, 2011 return-to-work, ARTCO paid Plaintiff maintenance (as well as supplemental wages and all of Plaintiff's medical bills relating to this injury).  The Court accepts the proposition, urged by Plaintiff, that an injured seaman's right to maintenance and cure may continue beyond the date of his re-employment, if maximum cure has not been achieved.  But in the instant case, Plaintiff has not demonstrated that he is entitled to summary judgment (or any other pretrial judgment) awarding him maintenance from December 6, 2011 to January 31, 2012.   Assuming the applicability of the legal standards advocated by Plaintiff (*see, e.g.,* Doc. 27, p. 4; "there is ample authority holding that **if the seaman can establish that he had not in fact fully recovered**, his return to work does not terminate his right to maintenance and cure"), Plaintiff has not established this.  To the contrary, the record before the Court contains a material fact issue as to when Plaintiff reached MMI.  Summary judgment is not appropriate.

Additionally, the record before the Court indicates that after Plaintiff was released to return to work in August 2011 without restrictions, he received food and lodging on the boat, he missed no work due to his wrist injury, he intended to continue working for ARTCO, and he would have continued working as an ARTCO towboat watchman had he not been fired for substance abuse (Plaintiff's Depo., pp. 196, 201). Plaintiff has offered no support for the proposition that his December 6, 2011 termination (which was completely unrelated to his wrist injury) somehow entitles him

to additional maintenance post-discharge.  The bottom line is this: a genuine issue of material fact remains which precludes entry of summary judgment in Plaintiff's favor on the December 6, 2011 maintenance claim.

    **D.**   <u>CONCLUSION</u>

For the reasons thoroughly delineated herein, the Court **DENIES** Plaintiff's motion for summary judgment (Doc. 23).  The Court notes that Plaintiff has "waived" his claim for attorney's fees (*see* Doc. 27, p. 5).  The four claims in the amended complaint remain set for trial December 2, 2013 before the undersigned Judge.

IT IS SO ORDERED.

DATED June 27, 2013.

s/ ***Michael J. Reagan***
Michael J. Reagan
United States District Judge
